UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**ORDER**
05-MD-1720 (MKB) (JO)

This document refers to: ALL ACTIONS

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

The Court, having considered the Rule 23(b)(3) Class Plaintiffs' Motion for Class Representative Service Awards, (Mot. for Class Representative Service Awards, Docket Entry No. 7472), and all of the submissions, arguments, and objections made with respect to the motion, including those stated on the record at the December 7, 2019 final fairness hearing, approves service awards and expenses in the amounts requested and as specified in this Order.

"An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). "[W]hen deciding requests for such awards, courts often look to the sums awarded in similar cases, and compare the named plaintiff's requested award to each class member's estimated *pro rata* share of the monetary judgment or settlement." *In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citations omitted). "[T]he decision to grant the award, and the amount thereof, rests solely within the discretion of the Court." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). Courts have approved similarly-sized service awards, even in cases with smaller settlement fund sizes and for cases that proceeded for

a shorter duration of time. *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (granting $50,000 for six plaintiffs and $100,000 for two plaintiffs out of a $504.5 million settlement fund); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-CV-686, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (approving three awards of $50,000 each out of a $150 million settlement fund); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving $50,000 each to eleven named plaintiffs as reasonable in light of the fact that litigation spanned ten years, out of a nearly $12 million settlement fund); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (approving special master's recommended awards of $85,000 and $50,000 out of a $115 million settlement fund); *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, No. 07-CV-1078, 2014 WL 12738907, at *2 (E.D. Pa. July 14, 2014) (awarding one plaintiff $150,000 out of a $130 million settlement fund secured in conjunction with injunctive relief); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to one named plaintiff out of a $163.5 million settlement fund).

Class Representatives spent an enormous amount of time and resources in serving as named representatives in this complex litigation that has spanned well over a decade. Certain Class Representatives expended additional effort that far exceeded what an average class representative might do to advocate on behalf of the class. For example, in addition to making himself available for normal litigation duties, including responding to extensive discovery requests, Mitch Goldstone of Photos Etc. spent significant energy and time (despite being a small business owner) disseminating information to potential class members about both interchange fees and the litigation, and became somewhat of a class spokesperson. (*See* Suppl. and Am. Decl. of Mitch Goldstone, Docket Entry No. 6367-4.) Regarding lobbying efforts for the Durbin

Amendment, Goldstone "met with several members of Congress and their staffs . . . [and] took a 1980s-era credit-card imprinter with [him] as a visual tool to illustrate how outdated interchange fees were in the age of electronic commerce." (*Id.* at 9.) There is no indication that any Class Representative assumed the position or undertook the time and labor they did in anticipation of being compensated. In addition, the Court notes that Class Counsel does not seek service awards in excess of the service awards requested and previously granted pursuant to the now-vacated 2013 Settlement Agreement, *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 213, 223 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016), despite significant additional efforts and time spent by the Class Plaintiffs in the six years since that time, including time spent as a result of another round of discovery. Finally, the Court notes that the two nineteenth-century cases cited by objector Kevan McLaughlin have been distinguished by a court in this Circuit, which rejected a similar argument, and that the specific argument he puts forth has been rejected by another Circuit. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, at *16 n.21 (S.D.N.Y. Sept. 8, 2017); *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir. 2019).

Accordingly, the Court orders that awards be paid to the Rule 23(b)(3) Class Plaintiffs as follows for their prosecution of this litigation and their efforts for obtaining the settlement on behalf of the Class:

| Representative | Out-of-Pocket Expenses | Service Award | Total (Award + Expenses) |
|---|---|---|---|
| Traditions | $ 8,418.49 | $ 200,000.00 | $ 208,418.49 |
| Photos Etc. | $ 6,860.44 | $ 200,000.00 | $ 206,860.44 |
| Discount Optics | $ 12,773.55 | $ 100,000.00 | $ 112,773.55 |
| Payless | N/A | $ 100,000.00 | $ 100,000.00 |
| CHS | N/A | $ 100,000.00 | $ 100,000.00 |
| Parkway | $ 3,540.53 | $ 75,000.00 | $ 78,540.53 |
| Leon's Transmission | $ 450.00 | $ 75,000.00 | $ 75,450.00 |
| Capital Audio | $ 3,600.00 | $ 50,000.00 | $ 53,600.00 |

These amounts shall be paid from the Net Cash Settlement Escrow Account no less than twenty (20) days after the Settlement Final Date and are in addition to whatever monies these Rule 23(b)(3) Class Plaintiffs will receive in the form of their distributions from the Net Cash Settlement Escrow Account.

Without affecting the finality of this Order in any respect, the Court reserves jurisdiction over any matters related to or ancillary to this Order. Finding that there is no just reason for delay, this Order shall constitute a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Dated: December 16, 2019
       Brooklyn, New York

                                                SO ORDERED:

                                                ___s/ MKB_____
                                                MARGO K. BRODIE
                                                United States District Judge